# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

| In Re: | |
|---|---|
| SAMANTHA L. MASI, | **Bankruptcy Case No. 05-00412** |
| **Debtor.** | |

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

      Kelly Beeman, Boise, Idaho, Attorney for Debtor.

      Stephen French, Boise, Idaho, Attorney for Creditors Mike McCormick and West Coast Car Sales.

      Chapter 7 Debtor Samantha Masi asks for an award of money damages from Mike McCormick and his company, West Coast Car Company, because, she alleges, they willfully violated the automatic stay. Mot. for Sanctions, Docket No. 7. Debtor contends that after learning of her bankruptcy filing, West Coast, acting through McCormick, demanded that she return the car she had purchased from West Coast, or that she pay the balance owed, within three days. When Debtor did not comply, she alleges that McCormick caused her vehicle to be repossessed while she was at work.

MEMORANDUM OF DECISION - 1

The Court conducted an evidentiary hearing on Debtor's motion on April 27, 2005. After considering the evidence and testimony, the parties' briefs, and applicable legal authorities, the Court concludes Debtor's motion should be granted for the reasons discussed below.[1]

## FACTS

Debtor is a twenty-one year old single mother. She works for the day care facility that her child attends in Boise. She lives with her mother.

On February 7, 2005, Debtor consulted a bankruptcy attorney. At his office, she reviewed papers he had drafted to file a bankruptcy case, and she signed a Chapter 7 bankruptcy petition. Ex. 1. After leaving her lawyer's office, Debtor, accompanied by her mother, went to West Coast Car Company ("West Coast")[2] in hopes of locating a car she could afford to purchase. Debtor had worked at West Coast several years ago and, based on her relationships with McCormick and other West Coast employees, Debtor assumed she would be treated fairly there.

---

[1] This Memorandum of Decision is the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052, 9014. Some aspects of the witnesses' testimony was conflicting and contradictory. In making its findings of fact, the Court has relied upon its opportunity to observe the witnesses testify, assess their credibility, and assign the proper weight to be afforded to their testimony.

[2] West Coast is the assumed business name of McCormick Enterprises Inc.; Mr. McCormick is the president of that company.

MEMORANDUM OF DECISION - 2

While at West Coast, Debtor completed a credit application and selected a 1997 Jeep Grand Cherokee that she might want to purchase.[3] West Coast employees allowed her to take the vehicle home overnight to consider the purchase.

On February 9, Debtor decided to purchase the Jeep. She agreed to a price of $6,999. Debtor traded-in her 1989 Chevrolet Corsica and gave West Coast $2,650 in cash. She financed a total of $3,493. The purchase contract provided:

> In the event of a time payment sale, this order shall not become binding until accepted by a bank or finance institution willing to purchase a time sales agreement between the party or parties hereto based on such items. In the event of a credit report unacceptable to the financing institution, the purchaser will return the vehicle herein described within 48 hours, to the dealer.

Ex. 4.

Debtor testified that a West Coast employee led her to believe that Westlake Financial had agreed to finance her purchase. But, in fact, Westlake had made no such commitment. Instead, after West Coast submitted the application, contract and other materials to the finance company, on February 19, 2005, Westlake notified West Coast that it would not extend credit to Debtor because it

---

[3] The application included a question about whether the applicant had been involved in a bankruptcy proceeding in the last ten years. Debtor answered the question "no," which at that point in time was accurate.

MEMORANDUM OF DECISION - 3

had discovered Debtor had just filed a Chapter 7 petition. Ex. 6. True enough, Debtor's petition under Chapter 7 of the Bankruptcy Code had been filed on February 11, 2005, two days after she made the deal with West Coast to buy the Jeep. Docket No. 1.

After learning of the finance company's unwillingness to purchase the contract, and the reason for its decision, West Coast employee Pamela Rains was dispatched to visit Debtor at the day care center on Thursday, February 24. Rains informed Debtor that she needed either to pay $3,500 to West Coast by the following Monday or return the Jeep. If Debtor would give up the Jeep, Rains told Debtor her Chevrolet and her down payment would be returned to her.

After Rains left, Debtor contacted her bankruptcy lawyer. The attorney immediately sent a letter to McCormick via facsimile. Ex. A. In that letter, counsel expressed his opinion that Rains' visit and West Coast's collection efforts had violated the automatic stay, and he warned McCormick that any attempt to repossess the vehicle would result in the filing of a "Motion for Sanctions." Ex. A.

McCormick testified that after receiving this letter he consulted a representative of a local automobile dealers' association for advice. Based upon what he was told, he concluded that since Debtor's loan had never been finalized, the sale of the Jeep to her was not effective under the terms of the parties'

MEMORANDUM OF DECISION - 4

contract.  As a result, McCormick decided he was free to repossess the Jeep without regard to Debtor's bankruptcy filing.

McCormick hired a repossession agent to pick up the vehicle.  While he could not remember the exact date he retained this agent, he remembered it was between seven and ten days after Westlake declined to fund Debtor's loan.  The repo agent was also a private investigator.

Debtor claims that on Friday, February 25, she was followed in her car while driving around Boise, over the course of several hours, by another driver whose conduct frightened her to the point that she called the local police.  The police informed Debtor that the vehicle following her was registered to a private investigator, but would not reveal any other information to her.

On March 1, 2005, Debtor drove her Jeep to work.  That afternoon, Debtor's employer informed her that a tow truck was attempting to take her Jeep.  When Debtor went outside to confront the tow truck driver, she saw the vehicle that had been following her a few days earlier.  The implication of Debtor's testimony on this point was that the driver of the vehicle that had harassed Debtor earlier was present and was directing the repossession.

Debtor protested the repossession and called the local police.  The police arrived, but offered Debtor no relief, and over her emotional objections, Debtor's vehicle was towed away.  With her employer's help, Debtor was able to

MEMORANDUM OF DECISION - 5

remove a child car seat and some of Debtor's other personal effects from the Jeep, but she could not remove several compact disks, her debit card, and some other miscellaneous items from the vehicle.

Unfortunately, several of the children at the day care facility observed this traumatic and emotional scene. Some of the youngsters were distraught, and when they returned home, they recounted the day's events to their parents. Debtor and her employer were contacted by the distressed parents, and Debtor was required to reassure the children and several parents that she was not a thief and to otherwise explain the situation. This caused Debtor additional emotional strain.

Through the efforts of her attorney, Debtor finally regained possession of the Jeep on April 11, when McCormick directed West Coast employees to return the vehicle to Debtor's workplace. The Jeep had a dead battery and was inoperable, and four of Debtor's compact disks were missing.[4] In addition, Debtor's license plates had been removed and discarded. When she complained, the next day McCormick sent a mechanic to replace the battery, and another of McCormick's employees arranged to re-register the Jeep so she could obtain new license plates.

---

[4] Debtor's other missing items were apparently returned to her prior to the hearing.

MEMORANDUM OF DECISION - 6

Debtor filed her Motion for Sanctions on March 2, 2005. Docket No. 7. McCormick filed a response on April 25, 2005. Docket No. 41.[5]

## DISCUSSION

Debtor's motion raises two questions. First, did McCormick and West Coast violate the § 362(a) automatic stay? And second, if either did, is Debtor entitled to damages as provided by § 362(h)?

The Bankruptcy Code instructs that:

> "[A] petition filed under [the Bankruptcy Code] . . . operates as a stay, applicable to all entities, of . . .
>
>   (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>    . . . .
>   (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a). An "individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h).

A creditor willfully violates the automatic stay when (1) it knows of the existence of the automatic stay and (2) intentionally acts in violation of that

---

[5] This pleading is entitled "Motion Regarding Sanctions" but at the hearing, the parties and the Court agreed it should be considered a response to Debtor's motion. Both Debtor and West Coast have also filed briefs. Docket Nos. 40, 49, 52.

MEMORANDUM OF DECISION - 7

stay. *Eskanos & Adler, P.C. v. Leetin*, 309 F.3d 1210, 1215 (9th Cir. 2002); *In re Daniels*, 04.4 I.B.C.R. 153, 156 (Bankr. D. Idaho 2004). The creditor need not act with a specific intent to violate the stay; it is enough that the creditor intended the act that in fact violates the stay. *In re Daniels*, 04.4 I.B.C.R. at 156. An award of actual damages is mandatory if a debtor proves both that a willful violation occurred and that the debtor suffered some injury as a result. *See id.* at 157 (noting award is mandatory); *In re Jacobson*, 03.2 I.B.C.R. 119, 121 Bankr. D. Idaho 2003) (noting actual damages must be proved).

The critical role of the automatic stay in a bankruptcy case can not be overstated. Through the stay, debtors are given the relief necessary to put their financial affairs in order and to obtain a discharge. The stay also prevents creditors from racing to dismember financially the debtor to the prejudice of other creditors. Simply put, the automatic stay is one of the most fundamental and important protections provided to debtors and creditors by the federal Bankruptcy Code. *In re Daniels*, 04.4 I.B.C.R. at 140.

**A.    The parties' legal interests in the Jeep upon Debtor's bankruptcy filing.**

The precise extent of the parties' legal relationship on the date Debtor's bankruptcy case was filed is not entirely clear. But in this context, precision is not required.

MEMORANDUM OF DECISION - 8

Under the Bankruptcy Code, the commencement of a bankruptcy case creates a bankruptcy estate. 11 U.S.C. § 541(a). This estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In other words, whatever interest Debtor held in the Jeep when her bankruptcy petition was filed became property of the resulting bankruptcy estate. This estate would include Debtor's possessory interest. *Williams v. Levi* (*In re Williams*), __ B.R. __, No. BAP CC-04-1033-BKPA, 2005 WL 857439 at *5–*6 (B.A.P. 9th Cir. Mar. 25, 2005) (noting that a possessory interest in real property constitutes property of the estate).

Under these authorities, it is not particularly significant whether Debtor "owned" the Jeep for purposes of this analysis. At a minimum, it is undisputed Debtor had possession of the Jeep on the date she filed bankruptcy under the terms of the parties' contract. As a result, both Debtor and the Jeep were protected by the § 362(a) automatic stay.[6]

At the same time, as of the date of Debtor's bankruptcy filing, it is equally clear that West Coast was a creditor and held either a prebankruptcy

---

[6] Although it is not clear from the record, Debtor may have held other legal rights in the Jeep that were protected by the stay. For example, she may have been the title holder of record, Idaho Code § 49-503; *Hopkins v. Shradley*, 03.1 I.B.C.R. 7, 8 (Bankr. D. Idaho 2003), and if West Coast held an enforceable security interest in the Jeep, a question on which the Court expresses no opinion at this time, West Coast's interests would be limited to those granted to secured creditors under Idaho Code § 28-9-101 *et seq*. Alternatively, if unsecured, West Coast may simply be a seller of goods and the parties' relationship would be defined by Idaho Code § 28-2-101 *et seq*.

MEMORANDUM OF DECISION - 9

contractual claim against Debtor for the unpaid purchase price of the Jeep, or failing financing, a right to the return of the Jeep. For bankruptcy purposes, a "creditor" is "an entity that has a claim against the debtor that arose at or before the order for relief . . . ." 11 U.S.C. § 101(10)(A). A "claim" is any right to payment from, or to an equitable remedy against, a debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(5).

Under these facts, any attempts by West Coast to collect the unpaid purchase price, or to retrieve the Jeep, were surely stayed by the provisions of § 362(a) quoted above.

### B.     Both McCormick and West Coast willfully violated the stay.

West Coast, as a business entity, acts through its agents and employees. McCormick managed West Coast. In this case, West Coast was put on notice of Debtor's bankruptcy filing, and the existence of the automatic stay, no later than February 19 when it received word from Westlake that it would not fund Debtor's automobile loan because she had filed a bankruptcy case. McCormick testified that he did not specifically remember receiving this communication or learning of its contents. But, even if the Court believes McCormick did not learn earlier, there is no dispute that he became aware of the automatic stay arising in Debtor's case on February 25 when Debtor's attorney ("Counsel") sent him a

MEMORANDUM OF DECISION - 10

letter informing him of Debtor's filing and warning him not to attempt to repossess the Jeep.

West Coast acted intentionally and in fact violated the stay when its agent, Pamela Rains, personally confronted Debtor at work on February 24. This contact constituted both an attempt to obtain possession of property of the bankruptcy estate in violation of § 362(a)(3), and an attempt to collect a claim against Debtor in violation of § 362(a)(6).

As the manager, McCormick is charged with knowledge of the activities of the various employees of West Coast, including Rains. But even if he were totally unaware of what was transpiring with Debtor, it was McCormick who personally hired the repossession agent and directed him to repossess the Jeep. Both McCormick and West Coast violated the § 362(a)(3)[7] stay by orchestrating the repossession. *See In re Andrus*, 04.3 I.B.C.R. 137, 141–44 (Bankr. D. Idaho 2004) (finding similar conduct to have violated the stay).

    **C.**    **Debtor's damages.**

        **1. Actual damages.**

Debtor concedes she incurred no significant actual economic damages, apart from her attorney's fees, on account of McCormick and West Coast's stay violations. Pl.'s First Brief at 5, Docket No. 49; *In re Jacobson*, 03.2

---

[7] Whether or not the repossession agent violated the automatic stay is not before the Court.

MEMORANDUM OF DECISION - 11

I.B.C.R. at 121 (noting an attorney's fees constitute actual damages for § 362(h) purposes). There is evidence in the record that friends and family provided transportation for Debtor and her child while she was without the Jeep; that most of her personal effects were returned to her; and that West Coast remedied the battery, license plate and registration issues. In addition, Debtor does not argue, and so the Court need not address, whether Debtor is entitled to recover money damages for the emotional distress she may have suffered as a result of the tumultuous repossession. *See Dawson v. Washington Mutual Bank, F.A.* (*In re Dawson*), 390 F.3d 1139, 1148 (9th Cir. 2004).

Apparently, Debtor seeks only to recover her attorney fees and costs incurred in connection with the stay violation as actual damages. Counsel has requested that he be allowed to prove up the amount Debtor will be charged for fees and costs after the Court renders a decision on whether Debtor is entitled to recover. Pl.'s First Brief at 5–6, Docket No. 49.

Frankly, Debtor's piecemeal approach to proving her damages is unnecessarily inefficient. Debtor could have submitted proof about the amount of her attorney fees and costs at the hearing, thereafter supplementing that proof in writing, post-hearing, to address any additional costs incurred in the preparation and filing of Debtor's post-hearing brief. In the past, the Court has declined to award damages for a stay violation because of insufficient proof of the amount of a debtor's damages.

MEMORANDUM OF DECISION - 12

Nonetheless, based on the record, the Court is comfortable in finding that Debtor has suffered actual damages in the form of the legal fees she has incurred as a result of McCormick and West Coast's conduct. Denying her relief because she failed to quantify the amount of her actual damages would only penalize her for her attorney's decisions, and would deny her the protection of the automatic stay and compound the harm she has suffered.

Debtor's attorney will be allowed to file an affidavit itemizing Debtor's attorney fees and costs within fourteen (14) days of the date of this Memorandum. If McCormick or West Coast objects to the amount claimed, they should file an objection within fourteen (14) days thereafter, and schedule the motion for further hearing before the Court.[8]

### 2. Punitive damages.

Because Debtor incurred some actual damages, the Court may consider Debtor's request that she also recover punitive damages from the stay violators. *In re Daniels*, 04.4 I.B.C.R. at 158. Punitive damages are appropriate

---

[8] Debtor's counsel faces an additional issue. Rule 2016(b) requires a debtor's attorney to file an amended disclosure concerning any changes to his fee agreement with Debtor within fifteen days after reaching a new agreement. Counsel's original disclosure covers only his services, and fee agreement, for the bankruptcy filing. No amended disclosure has been filed. Absent good cause, the failure to do so in a timely fashion constitutes a reason to reduce or deny Counsel's fees. *In re Larson*, 04.1 I.B.C.R. 15, 16 (Bankr. D. Idaho 2004). This issue will be considered in connection with fixing the amount of Debtor's attorney fees and costs.

MEMORANDUM OF DECISION - 13

in this context if McCormick's or West Coast's conduct reflects "a reckless or callous disregard for the law or rights of others." *Id*. (internal citations omitted).

In *In re Andrus,* the Court imposed punitive sanctions against a secured creditor, a towing company, and an auto dealer for their wrongful repossession of a debtor's vehicle in violation of the automatic stay. 04.1 I.B.C.R. at 144–46. In doing so, the Court focused on the creditor's continuing course of conduct in effecting the repossession despite having received notice of the debtor's bankruptcy filing. In part, sanctions were justified because certain parties "thumbed their collective noses at . . . the requirements of the Bankruptcy Code . . . , ignored the information about the automatic stay made available by Debtors' counsel . . . [and] neglected any and all opportunities to determine whether they were indeed on solid legal ground." *Id*. at 145. The Court awarded the debtor $8,000 in punitive damages and ordered that the lien on the debtors' vehicle be released in partial satisfaction of the punitive damages award. *Id*. at 146.

McCormick's and West Coast's conduct merits punitive damages. Both had ample advance notice of Debtor's bankruptcy filing before they acted. Despite this, West Coast engaged in collection efforts and McCormick ignored a warning from Debtor's attorney that a repossession attempt would violate federal law. Confronting Debtor at her place of employment was unconscionable. So, too, the tactics employed by the repossession agent selected by McCormick, who saw fit to stalk and terrorize Debtor in her car for several hours, were

MEMORANDUM OF DECISION - 14

reprehensible. Finally, the actual repossession was a fiasco. The repo agent caused a breach of the peace and unnecessarily embarrassed Debtor in front of her employer and the children attending the day care center. Moreover, McCormick and his company retained Debtor's Jeep for forty-one days before concluding they had relied upon bad advice and that their legal position was untenable.[9] All these factors clearly show that McCormick and West Coast acted with a reckless and callous disregard for Debtor's rights. The Court concludes that McCormick and West Coast have deserve the punitive damages they are ordered to pay below.

       To be fair, several factors weigh against a large monetary sanction in this case. The warning letter sent to McCormick was, in some respects, confusing and inartfully phrased. McCormick did seek guidance from a trade group representative before acting, although the legal advice he received was just plain wrong. And after learning that the repossession was "illegal," McCormick and West Coast made good faith efforts to remedy their acts.

       In addition, Debtor's conduct in this case merits some criticism. She bought a car on credit, after signing a petition at her attorney's office, knowing that her bankruptcy filing was imminent and without disclosing that fact to the

---

[9] The Court has suggested that in some cases creditors should be afforded a short time to seek legal advice on bankruptcy stay issues. *In re Jacobson,* 03.2 I.B.C.R. at 120. A creditor in *Jacobson* repossessed the debtor's property prior to filing but delayed in returning the property postpetition. The Court concluded that while it was appropriate to allow time to confer with an attorney, the creditor in that case had been unjustifiably dilatory. Whatever a "short time" means, the substantial delay in returning Debtor's vehicle in this case grossly exceeded that standard.

MEMORANDUM OF DECISION - 15

dealer or proposed lender. While in doing so, Debtor did not violate a law *per se*, her sense of ethics was questionable.[10] Debtor should not significantly profit from her strategy, and the consequences flowing from Debtor's conduct remain to be seen. Even so, two wrongs certainly do not make a right; the issue before the Court focuses primarily on Creditor's conduct, not Debtor's conduct.

McCormick and West Coast ask that if they are required to pay punitive damages, that recovery be given to the bankruptcy estate, rather than to Debtor, so the funds may be distributed to Debtor's unsecured creditors. This condition is appropriate because, in their opinion, Debtor "lied" on her credit application and acted inequitably. Brief at 4, Docket No. 50. In contrast, Debtor first asked the Court to award her the Jeep free of any liens or claims of West Lake, Mot. at 3–4, Docket No. 7, and then later, that the Court award her money damages and allow her to "reaffirm" the debt on the Jeep at 0% interest. Pl.'s First Brief at 6, Docket No. 49.

While tempting, McCormick's and West Coast's suggestion for punitive damages is problematic. The plain language of § 362(h) dictates that *the individual injured by* a willful stay violation shall recover damages. Here, Debtor,

---

[10] Debtor testified that she discussed her intentions with her bankruptcy attorney, who advised her that any debt she incurred would likely not be discharged. She also testified that she intended to reaffirm the debt on the Jeep. Even so, absent full disclosure of these facts to West Coast and Westlake, Debtor's conduct put others at financial risk. Debtor's attorney should also examine the propriety of his advice.

MEMORANDUM OF DECISION - 16

not the bankruptcy estate,[11] was injured by the stay violations; her creditors were not. *Compare In re Daniels*, 04.4 I.B.C.R. at 159 (awarding damages to the debtor, who was injured by a stay violation), *with Knupfer v. Lindblade* (*In re Dyer*), 322 F.3d 1178, 1189–90 (9th Cir. 2003) (explaining that the Chapter 7 trustee may recover damages under § 105(a) for a stay violation that harms the bankruptcy estate). Finally, since West Coast is likely a creditor in this case, it would be inappropriate to allow it to share in any distributions from the damage award.

There are also problems both approaches proposed by Debtor. In this case, the Court declines to award Debtor the Jeep free from any liens because no evidence was presented showing that West Coast holds a perfected security interest in the Jeep. Awarding Debtor the Jeep "free and clear" of the claims of West Coast will be a useless gesture if the creditor's claim to the Jeep is unenforceable. Moreover, due process requires that awards of punitive damages be proportional to the amount of actual damages, and here Debtor has not finally established the amount of her actual damages. *In re Wiersma*, 03.1 I.B.C.R. 42,

---

[11] Debtor claimed an exemption in her equity in the Jeep in the bankruptcy case, a claim that was allowed. Am. Schedule C, Docket No. 48. Her right to an award of damages for the stay violations, arising post-bankruptcy, also does not constitute property of the bankruptcy estate. *See* 11 U.S.C. § 541(a) (including in the estate the debtor's interests in property as of the commencement of the case); *cf. O'Loghlin v. County of Orange*, 229 F.3d 871, 874 (9th Cir. 2000) (noting that for bankruptcy purposes, a cause of action arises at the time of the events giving rise to the action).

MEMORANDUM OF DECISION - 17

44 (Bankr. D. Idaho 2003) (noting due process implications of punitive damage awards).

Debtor's other request for relief is likewise troubling. Debtor engages in loose use of bankruptcy terminology by asking that West Coast be forced to allow her to "reaffirm" the debt without interest. A reaffirmation in this context refers to a voluntary agreement between a debtor and creditor. *See* 11 U.S.C. § 524(c); *Bankruptcy Receivables Mgmt v. Lopez* (*In re Lopez*), 274 B.R. 854, 859–60 (B.A.P. 9th Cir. 2002) (noting reaffirmation requires a new agreement); *Huyett v. Idaho State University*, 104 P.3d 946, 951 (Idaho 2004) (stating that to be enforceable, an agreement requires mutual assent). West Coast has not agreed to Debtor's proposed remedy. While disguised as punitive damages, Debtor's request to force West Coast into extending her an interest-free loan amounts to a cramdown of the debt on the Jeep, a procedure not available to Chapter 7 debtors. *See Dewsnup v. Timm*, 502 U.S. 410, 417 (1992); *Roberts v. Nat'l Mortgage Servs*. (*In re Roberts*), 98.4 I.B.C.R. 106, 106–07 (Bankr. D. Idaho 1998).

While the solution may lack creativity, based on this record, the Court concludes McCormick and West Coast should be required to pay Debtor a straightforward monetary award of punitive damages. Because Debtor's actual damages are not yet quantified, unless this matter is resolved by the parties, the

MEMORANDUM OF DECISION - 18

Court will fix the amount of the punitive damage award when it determines the amount of Debtors' actual damages.

## CONCLUSION

McCormick and West Coast had knowledge of Debtor's bankruptcy filing but nonetheless engaged in prohibited activity by attempting to collect from Debtor and by repossessing the Jeep. Because McCormick and West Coast willfully violated the automatic stay, Debtor is entitled to recover, as actual damages, the attorney fees and costs she incurred in prosecuting this motion. Because McCormick and West Coast recklessly disregarded Debtor's rights, an additional award of punitive damages is appropriate.

Debtor's attorney is instructed to file a detailed affidavit itemizing the services provided and the attorney fees and costs Debtor incurred in connection with this matter within fourteen (14) days of the date of this Memorandum. If McCormick or West Coast objects to the amount claimed, they should file an objection within fourteen (14) days thereafter, and schedule the motion for further hearing before the Court. Thereafter, the Court will enter its order fixing the amount of actual and punitive damages Debtor should recover.

Dated: May 24, 2005

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 19